UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
      **JUDGE**

**LETTER OPINION**

June 15, 2009

Eric M. Underriner
Hill, Betts & Nash LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, NY 10281
*Attorneys for Ironhead Marine, Inc.*

Joseph N. Froelich
Locke Lord Bissell & Liddell LLP
885 Third Avenue, 26th Floor
New York, NY 10022
*Attorneys for Oliver Schrott Kommunikation GmbH*

Michael D. Wilson
Hill Rivkins & Hayden
102 South Broadway
South Amboy, NJ 08879
*Attorneys for Siemens AG*

James H. Power
Michael J. Frevola
Holland & Knight LLP
195 Broadway, 24th Floor
New York, NY 10007
*Attorneys for Barge Exiderdome No. 1*

      Re:    *Ironhead Marine, Inc. v. Barge Exiderdome No. 1, freights, engines, apparel, and tackle, in rem.*
             Civil Action No. 08-5553 (WJM)

Dear Counsel:

This matter comes before the Court on Plaintiff Ironhead Marine, Inc.'s Motion for Interlocutory Sale of Vessel. Pursuant to Fed. R. Civ. P. 78, oral arguments were not held. For the reasons stated below, Plaintiff's motion is **GRANTED**.

## BACKGROUND

In 2008, Siemens AG ("Siemens") contracted with Oliver Schrott Kommunikation GmbH ("OSK"), a German public relations firm, to manage an exhibition of its products and equipment known as the Exiderdome ("Exiderdome"). Dfdt. OSK's Opp. Br. 2. The Exiderdome consists of a series of containers used to display Siemens' wares at numerous conventions across North America. The containers are owned by OSK and leased to Siemens. Id.

In years past, the Exiderdome had been displayed at conventional exhibit halls on land, disassembled at the end of each event, and shipped in pieces to the next site, where it would be reassembled. In 2008, the exhibition schedule included a number of U.S. and Canadian cities located on the Great Lakes and along the eastern seaboard. Therefore, OSK decided it would be more practical to install the containers on a barge that could both serve as a floating exhibit hall and transport the Exiderdome intact from city to city, thereby eliminating the need for diassembly and reassembly. Id.

Accordingly, OSK Marketing & Communication ("OSK Marketing"), a subsidiary of OSK, hired Hannah Brothers Inc. ("Hannah") to provide a barge and a tug. Hannah purchased a tank barge for this purpose and then hired Ironhead to perform shipyard repairs and fabrication work, to convert the barge and render it suitable to carry the Exiderdome. The barge in its converted state is known as the Barge Exiderdome No. 1 ("Barge Exiderdome"). Id. at 3.

Ironhead performed the requested work but claims it was never paid for its services. Affirmation of Eric M. Underriner ("Underriner Aff.") ¶ 2; Pl.'s Cmpl. ¶¶ 6-7. Consequently, Ironhead alleges, it possesses a maritime lien against the Barge Exiderdome in its entirety, including both the original vessel and the exhibit structures installed aboard it. Pl.'s Cmpl. ¶ 11. On November 13, 2008, Plaintiff filed a complaint and moved to have the vessel arrested and sold, to recover the money it claims it is owed. The motion for arrest of the barge was granted, and the U.S. Marshal Service assumed custody. Underriner Aff. ¶ 6. In January 2009, custody was transferred to Vinik Marine Inc. ("Vinik"), where it remains. Although Vinik is able to store the vessel more economically than the U.S. Marshal Service, Plaintiff alleges that the wharfage fees being charged are still excessive. Plaintiff further alleges that the vessel is subject to deterioration and risk of harm while in custody and that an undue amount of time has passed, such that sale is warranted.[1]  Id. at ¶¶ 10-12.

Defendant OSK alleges that even if Ironhead has a maritime lien over the basic vessel, the

---

[1] Note that Plaintiff's failure to file an initial brief in connection with its notice of motion for interlocutory sale, or even a Local Rule 7.1(d)(4) statement asserting that a brief is unnecessary, as required in New Jersey, has made it difficult to sort out Plaintiff's position.

lien does not extend to the Exiderdome containers, which should be removed and returned to OSK before any sale takes place. Dfdt. OSK's Opp. Br. 3. Defendant Hannah, who retains ownership of the barge, argues that even if Ironhead once had a maritime lien, that lien has been expunged by accord and satisfaction, such that sale of the vessel is not warranted. Dfdt. Hannah's Opp. Br. 3. Hannah further argues that while Ironhead may have a breach of contract claim for non-payment, it does not have a maritime lien. *Id.* at 4.

## ANALYSIS

A district court may grant a motion for interlocutory sale if the moving party possesses a maritime lien over the vessel and can show that the vessel is subject to deterioration, that maintenance expenses are disproportionate, or that there has been an undue delay in releasing the vessel. 46 U.S.C. §§31341-43; Fed.R.Civ.P.Supp.Adm.R.E(9)(b); *Salazar v. Atlantic Sun*, 881 F.2d 73, 77 (3d Cir. 1989)*; Gowen, Inc. v. F/V Quality One*, 244 F.3d 64, 67 (1st Cir. 2001).

A party possesses a valid maritime lien when it has provided necessaries, including but not limited to repairs, supplies, towage, use of dry dock or marine railway, to a vessel, upon the order of the vessel's owner. 46 U.S.C. §§ 31301 and 31342. It is undisputed that the Barge Exiderdome is a vessel and that the shipyard repairs and fabrication work performed by Ironhead were at the request of Hannah, the barge's owner. Furthermore, repairs are specifically enumerated by the statute as a type of necessary. Thus, Ironhead's shipyard repairs clearly give rise to a maritime lien over the vessel.

Less obvious, however, is whether Ironhead's maritime lien attaches only to the bare vessel itself or to the Exiderdome structure as well. Defendants submit that any lien attaches only to the bare vessel, presumably because they believe a lien arising out of shipyard repairs should cover only the object of those repairs. From this perspective, the shipyard repairs lien would not give rise to a lien over the Exiderdome structure, nor would the construction of the Exiderdome give rise to its own lien because the "fabrication of the Exiderdome... cannot be considered a necessary which improved the vessel." (Defendant Hannah's Opp. Br. 4).

However, this position is without merit because the Third Circuit's test for defining a necessary takes a more expansive view. In *The Penn*, the Court of Appeals stated that "[t]he test of what is necessary is what is reasonably needed in the ship's business." *The Penn*, 273 F.990, 991 (3d Cir. 1921) (finding that food items carried aboard a ship for the purpose of feeding the ship's crew or passengers while on board constituted necessaries provided to the vessel, although food items transported aboard a ship and intended for consumption elsewhere might not). In the present case, the display containers were reasonably needed for the Barge Exiderdome to function as a mobile exhibit hall. The structures were installed on the barge not merely for transportation but so that the public could come aboard and view them. As such, the Exiderdome structure constitutes a necessary that was provided to the vessel, and Ironhead possesses a maritime lien over the entire Barge Exiderome.

Even assuming, *arguendo*, that the exhibit containers are not necessaries, this would not be fatal to Plaintiff's claim. Once a valid maritime lien comes into being, that lien attaches not only to the vessel itself but to all appurtenances of that vessel. Caselaw defines an appurtenance as anything "essential to the vessel's navigation, operation, or mission." *Gowen, Inc. v. F/V*

3

*Quality One*, 244 F.3d 64 (1st Cir. 2001); *see also Turner v. U.S.*, 27 F.2d 134 (2d Cir. 1928). Because the mission of the Barge is to serve as a floating exhibit hall, the Exiderdome structure is critical and is fairly deemed an appurtenance.[2]

Plaintiff thus possesses a valid maritime lien over the entire Barge Exiderdome, including the basic vessel and the Exiderdome structure.[3] Plaintiff also makes a credible argument that $1,200 per day in custodial and wharfage fees, in addition to the $140,000 already expended, is excessive. Finally, Plaintiff makes credible assertions that there has been an undue delay in releasing the vessel and that it is subject to deterioration while in custody. Plaintiff has satisfied the test for interlocutory sale.

The only issue left for consideration is whether or not Plaintiff's maritime lien was somehow extinguished by accord and satisfaction. Defendant Hannah makes a superficial allegation that on November 3-6, 2008, it reached an accord and satisfaction agreement with Ironhead, whereby Hannah would pay Ironhead the reduced sum of $350,000 as the full and final payment of Hannah Brothers' outstanding debts to Ironhead Marine, Inc. Affirmation of Donald Hannah ("Hannah Aff.") ¶ 17. However, there is insufficient evidence in support of this allegation.[4] While Ironhead acknowledges receipt of $350,000 from Hannah, it says that this was merely a partial payment as part of a payment plan, there was no accord and satisfaction, and that none was ever contemplated. Affirmation of Tony LaMantia ("LaMantia Aff.") ¶ 8. Moreover, there is no evidence showing any meeting of the minds between Ironhead and Hannah that the $350,000 was meant to extinguish the remainder of Hannah's debt. The only evidence Hannah points to in support of accord and satisfaction is an email from the president of Ironhead, asking on which invoices Hannah planned to make partial payments. Hannah Aff. Ex. 3. Rather than support Hannah's claim of accord and satisfaction, to the contrary, this evidence tends to support the idea that the $350,000 represented only partial payments towards satisfaction of the overall outstanding debt. Absent accord and satisfaction, Plaintiff's maritime lien over the Barge Exiderdome remains intact.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Interlocutory Sale is **GRANTED**. The Court declines to grant Defendant Hannah's requests for a discretionary denial of Ironhead's

---

[2]Defendant OSK's argument that Ironhead is not entitled to a lien against property owned by third parties is unavailing, as "[c]ourts have repeatedly upheld maritime liens upon severable equipment, including... equipment merely leased to the owner." *Gowen, Inc. v. F/V Quality One*, 244 F.3d at 69.

[3]Whether it is regarded as a single maritime lien arising out of repairs to the vessel and its appurtenances or as two separate maritime liens, one that arises from repairs to the bare vessel only and one from the provision of necessaries (the exhibit structure), there is a lien against the entire Barge Exiderdome.

[4]Furthermore, to the extent that Hannah seems to allege accord and satisfaction with respect to Ironhead's repair work only and not the fabrication work, this argument is unavailing. As described above, the fabrication work also gives rise to a maritime lien.

maritime lien or for a conversion of the Rule C arrest of the vessel into a Rule B attachment of the Exiderdome structure followed by removal and release of the structure.  An appropriate Order follows.


          /s/ William J. Martini
          **William J. Martini, U.S.D.J.**